UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


DONALD MARCHESE, JR.,

    Petitioner,        Hon. Gordon J. Quist

v.                Case No. 1:09-CV-1104

BLAINE LAFLER,

    Respondent.

_____/


## REPORT AND RECOMMENDATION

    This matter is before the Court on Marchese's petition for writ of habeas corpus. In accordance with 28 U.S.C. § 636(b) authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of prisoner petitions, the undersigned recommends that Marchese's petition be **denied**.


## BACKGROUND

    As a result of events which occurred on December 23, 2007, Petitioner was charged with: (1) breaking and entering a building with the intent to commit larceny; (2) possession of burglar tools; and (3) larceny of property valued at $1,000.00 or more but less than $20,000.00. (Plea Transcript, February 19, 2008, 5).  Petitioner was also charged with being a fourth degree

habitual felon, having been previously convicted of three felonies.[1]  *Id.*  Pursuant to a plea agreement, Petitioner agreed to plead guilty to: (1) the larceny charge; and (2) having been previously convicted of two felonies.  *Id.* at 5-6.  In return, the prosecution agreed to: (1) dismiss the breaking and entering and possession of burglar tools charges; (2) dismiss the fourth degree habitual felon charge; and (3) recommend to the court that Petitioner receive a sentence within the appropriate guidelines range.  *Id.*

Petitioner subsequently moved to withdraw his guilty plea on the ground that "he has been charged with a crime that he didn't actually commit, and thus had to admit to facts that were not true." (Dkt. #24).  Petitioner's motion was denied and he was sentenced to serve 43-120 months in prison.  (Sentencing Transcript, April 7, 2008, 65).  Asserting the following claims, Petitioner later moved in the Michigan Court of Appeals for leave to appeal his convictions and sentence:

> I.    Whether the trial court misapplied the law and/or abused its discretion when it ruled against Defendant's motion to withdraw his plea - arguing a legal impossibility - as the actions admitted to during the plea taking are factually and legally insufficient to meet the element of asportation, or the movement of the item, during the commission of a larceny and therefore Defendant-Appellant believes he is only guilty of attempted larceny?
>
> II.   Did the use of improperly charged greater offenses influence the Defendant's guilty plea, causing the plea to be illusory and swaying the Defendant's decision to exercise his right to trial by jury?
>
> III.  Was the use of improperly charged greater offenses and the "threat" of additional charges by the State, vindictive prosecution, in violation of Defendant's

---

[1]   According to the information contained in the Presentence Investigation Report, Petitioner had actually been convicted of six previous felonies.  (Presentence Investigation Report, Dkt. #27).

2

due process rights?

IV.     Did the use of "hearsay" testimony by the prosecutor to assess 10 points for offense variable 9 violate clearly established rules of evidence, Defendant's right to be sentenced using accurate information, and Defendant's right to confrontation?

V.      Did the overall errors of Defendant's trial attorney render him ineffective in violation of Defendant's constitutional right to effective assistance according to the clearly established standards of *Strickland* and *Pickens*?

The Michigan Court of Appeals denied Petitioner's motion for leave to appeal for lack of merit in the grounds presented.  *People v. Marchese*, No. 290310, Order (Mich. Ct. App., April 8, 2009).  Asserting claims II-V immediately above, Petitioner moved in the Michigan Supreme Court for leave to appeal.  The court denied Petitioner's request, stating that "we are not persuaded that the questions presented should be reviewed by this Court." *People v. Marchese,* No. 138874, Order (Mich., September 23, 2009).  On December 4, 2009, Petitioner initiated the present action in which he asserts claims II-V immediately identified above.

**STANDARD OF REVIEW**

Marchese's petition is subject to the provisions of the Antiterrorism and Effective Death Penalty Act (AEDPA), as it amended 28 U.S.C. § 2254.  The AEDPA amended the substantive standards for granting habeas relief under the following provisions:

(d)     An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —

(1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or

(2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The AEDPA has "modified" the role of the federal courts in habeas proceedings to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).

Pursuant to § 2254(d)(1), a decision is "contrary to" clearly established federal law when "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at an opposite result." *Ayers v. Hudson*, 623 F.3d 301, 307 (6th Cir. 2010) (quoting *Williams v. Taylor*, 529 U.S. 362, 405 (2000)).

Prior to *Williams*, the Sixth Circuit interpreted the "unreasonable application" clause of § 2254(d)(1) as precluding habeas relief unless the state court's decision was "so clearly incorrect that it would not be debatable among reasonable jurists." *Gordon v. Kelly*, 2000 WL 145144 at *4 (6th Cir., February 1, 2000); *see also*, *Blanton v. Elo*, 186 F.3d 712, 714-15 (6th Cir. 1999). The *Williams* Court rejected this standard, indicating that it improperly transformed the "unreasonable application" examination into a subjective inquiry turning on whether "at least one of the Nation's jurists has applied the relevant federal law in the same manner" as did the state court. *Williams*, 529 U.S. at 409.

4

In articulating the proper standard, the Court held that a writ may not issue simply because the reviewing court "concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams,* 529 U.S. at 411. Rather, the Court must also find the state court's application thereof to be *objectively* unreasonable. *Bell*, 535 U.S. at 694; *Williams*, 529 U.S. at 409-12. Accordingly, a state court unreasonably applies clearly established federal law if it "identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case" or if it "either unreasonably extends or unreasonably refuses to extend a legal principle from the Supreme Court precedent to a new context." *Ayers*, 623 F.3d at 307. Furthermore, review under § 2254(d)(1) "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, - - - S.Ct. - - -, 2011 WL 1225705 at *8 (Apr. 4, 2011).

Pursuant to 28 U.S.C. § 2254(d)(2), when reviewing whether the decision of the state court was based on an unreasonable determination of the facts in light of the evidence presented, the "factual determination by [the] state courts are presumed correct absent clear and convincing evidence to the contrary." *Ayers*, 623 F.3d at 308. Accordingly, a decision "adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." While this standard is "demanding" it is "not insatiable." *Id.*

For a writ to issue pursuant to § 2254(d)(1), the Court must find a violation of clearly established federal law "as set forth by the Supreme Court at the time the state court rendered its decision." *Stewart v. Irwin*, 503 F.3d 488, 493 (6th Cir. 2007). This definition of "clearly

5

established federal law" includes "only the holdings of the Supreme Court, rather than its dicta." *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). Nevertheless, "the decisions of lower federal courts may be instructive in assessing the reasonableness of a state court's resolution of an issue." *Stewart*, 503 F.3d at 493.

As previously noted, § 2254(d) provides that habeas relief "shall not be granted with respect to any claim that was adjudicated on the merits" unless the petitioner can satisfy the requirements of either § 2254(d)(1) or § 2254(d)(2). This provision, however, "does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" *Harrington v. Richter*, 131 S.Ct. 770, 785 (2011). Instead, when a federal claim has been presented to a state court and the state court has denied relief, "it may be presumed that the state court adjudicated the claim on the merits." *Id.* at 784-85. Where such is the case, the Court must apply the deferential standard of review articulated above, rather than some other less deferential standard.

The presumption that the state court "adjudicated [a] claim on the merits" may be overcome only "when there is reason to think some other explanation for the state court's decision is more likely." *Id.* If this presumption is overcome, however, the Court reviews the matter de novo. *See Wiggins v. Smith*, 539 U.S. 510, 533-35 (2003) (reviewing habeas issue *de novo* where state courts had not reached the question); *see also, Maples v. Stegall*, 340 F.3d 433, 437 (6th Cir. 2003) (recognizing that *Wiggins* established *de novo* standard of review for any claim that was not addressed by the state courts).

In the present case, while Petitioner presented his habeas claims to both the Michigan Court of Appeals and the Michigan Supreme Court, neither court accepted review of Petitioner's

appeals. Thus, neither court adjudicated the merits of Petitioner's claims. Accordingly, this Court must evaluate Petitioner's claims *de novo* as there is no state court decision or resolution to which this Court can defer.

## ANALYSIS

### I.             Voluntariness of Petitioner's Guilty Plea

As previously noted, Petitioner was originally charged with four offenses: (1) breaking and entering a building with the intent to commit larceny; (2) possession of burglar tools; (3) larceny of property valued at $1,000.00 or more but less than $20,000.00; and (4) being a fourth habitual offender. Petitioner agreed to plead guilty to the larceny charge as well as to being a third habitual offender in return for the dismissal of the breaking and entering, possession of burglar tools, and fourth habitual offender charges. In his first habeas claim, Petitioner asserts that because "there was insufficient evidence to convict" on the breaking and entering and possession of burglar tools charges his decision to plead guilty to larceny was involuntary, unintelligent, and based upon an illusory bargain.

At the outset, the Court notes that the relevant question is not, as Petitioner asserts, whether the prosecution presented sufficient evidence to convict Petitioner of breaking and entering or possession of burglar tools. Petitioner was not convicted of these offenses and because these charges were dismissed as part of the aforementioned plea agreement, the trial court had no cause to explore or receive evidence concerning such. Furthermore, while Petitioner asserts that it was somehow "improper" to charge him with these particular offenses, Petitioner advances neither argument nor evidence that the prosecuting attorney lacked a sufficient basis to charge Petitioner

7

with these particular offenses.[2]  Rather, the issue presented by Petitioner's claim is simply whether his decision to plead guilty to larceny was voluntary, knowing, and intelligent.

A guilty plea is more than an admission that the accused performed certain acts, but is instead "a conviction." *Boykin v. Alabama*, 395 U.S. 238, 242 (1969).  Following a guilty plea "nothing remains but to give judgment and determine punishment." *Id.*  By pleading guilty a criminal defendant surrenders several important constitutional rights, including (a) the privilege against compelled self-incrimination; (b) the right to trial by jury; and (c) the right to confront one's accusers. *Id.* at 243.  To ensure that a criminal defendant is not improperly deprived of these (and other) rights, to be valid a guilty plea must be made "voluntarily, knowingly, and intelligently" with "sufficient awareness of the relevant circumstances and likely consequences." *Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005).

As noted above, the *Boykin* Court identified certain rights which a criminal defendant waives by pleading guilty.  While the *Boykin* Court made clear that waiver of these (and other) rights cannot be assumed, the Court did not hold that a guilty plea is valid only where a criminal defendant was first notified as to each and every right he would be waiving by pleading guilty. *Boykin*, 395 U.S. at 243-44.  In fact, less than one year after its *Boykin* decision the Supreme Court, in *Brady v. United States*, 397 U.S. 742 (1970), upheld the validity of a guilty plea even though the defendant had not been specifically advised of the rights identified by the *Boykin* Court. *Id.* at 743-58.  With respect to its *Boykin* decision, the Court clarified its significance stating that "[t]he new element added in *Boykin* was the requirement that the record must affirmatively disclose that a defendant who

---

[2]  As discussed in the following section, the record, in fact, reveals that there existed probable cause to charge Petitioner with these offenses.

pleaded guilty entered his plea understandingly and voluntarily." *Id.* at 747 n.4.

Accordingly, as other courts have since recognized, neither *Boykin* nor any other Supreme Court authority requires that a criminal defendant be specifically advised of any particular rights before his guilty plea can be deemed constitutionally valid. *See, e.g., Threadgill v. Galaza*, 2006 WL 2084165 at *3 (E.D. Cal., July 25, 2006) ("specific articulation of the *Boykin* rights is not the sine qua non of a valid guilty plea;" if the "record demonstrates that a guilty plea is knowing and voluntary, no particular ritual or showing on the record is required"); *United States v. Toles*, 1992 WL 129284 at *3 (9th Cir., June 4, 1992) ("*Boykin* does not require that the trial judge specifically list each right waived by a defendant who pleads guilty"); *Carter v. Brooks*, 2001 WL 169584 at *6-7 (D. Conn., Feb. 13, 2001) (the Supreme Court has "in no way intimated the precise terms of the inquiry that the trial judge should make of a defendant before accepting his plea" and "a guilty plea will not be invalidated simply because of the district court's failure. . .to enumerate one or more of the rights waived by the defendant as the result of such a plea"); *United States v. Smith*, 1990 WL 92601 at *2 (9th Cir., July 5, 1990) (the standard is not whether the trial judge specifically articulated certain rights, but whether "the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant").

Accordingly, the relevant question is not whether the trial judge specifically articulated or identified for Petitioner a list of the various rights he would be surrendering by pleading no contest. Rather, as noted above, the question is whether Petitioner's decision to plead no contest was made "voluntarily, knowingly, and intelligently" with "sufficient awareness of the relevant circumstances and likely consequences." The plea must represent "a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Wilkerson v.*

9

*Jones*, 109 Fed. Appx. 22, 23 (6th Cir., Aug. 6, 2004) (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)).   Determining whether a plea of no contest satisfies this standard requires "an evaluation of all the relevant circumstances surrounding the plea." *King v. Dutton*, 17 F.3d 151, 153 (6th Cir. 1994).

At the February 19, 2008 plea hearing, the trial judge discussed the matter at length with Petitioner, Petitioner's counsel, and the prosecuting attorney.   Petitioner and his attorney both acknowledged that they understood the parameters of the plea agreement, detailed above, to which Petitioner was agreeing.   (Plea Hearing, February 19, 2008, 3-10).   The trial judge confirmed with Petitioner that he understood the potential penalties that accompanied a conviction, as a third habitual felon, for larceny of property valued at $1,000.00 or more but less than $20,000.00. Specifically, the trial judge confirmed that Petitioner understood that if convicted on the larceny charge alone he faced the following punishments: (1) not more than five years in prison; (2) a fine of not more than $10,000.00 or three times the value of the property stolen, whichever is greater; or (3) both imprisonment and a fine.   (Tr. 9).   The trial judge further confirmed that Petitioner understood that by also pleading guilty to being a third habitual felon, these potential punishments were doubled.   (Tr. 9).

The trial judge also ensured that Petitioner understood that by pleading guilty he was surrendering the right to jury trial or trial of any kind.   (Tr. 11).   Petitioner acknowledged receiving an Advice of Rights form which detailed all of the trial-related rights he was surrendering by pleading guilty.   (Tr. 11).   Petitioner further acknowledged reviewing with his attorney the contents of the Advice of Rights form.   (Tr. 11).   Petitioner acknowledged that he understood that if he pleaded guilty he would surrender his right to an automatic appeal as of right in the Michigan Court

of Appeals.  (Tr. 12).  Petitioner acknowledged his understanding that by pleading guilty he was giving up any claim that his plea was not freely made or was the result of threats or promises that were not placed on the record.  (Tr. 12-13).

Given the evidence of record, the Court finds unpersuasive Petitioner's arguemnt that his decision to plead guilty was not made "voluntarily, knowingly, and intelligently" with "sufficient awareness of the relevant circumstances and likely consequences."  As for Petitioner's argument that the plea bargain into which he entered was illusory, the Court is equally unpersuaded.

Petitioner's argument in this regard is based on his assertion that there did not exist sufficient evidence to convict him of breaking and entering or possession of burglar tools.  Petitioner asserts that because he could not possibly have been convicted of these two offenses, he received no benefit from the plea agreement into which he entered.

First, as previously noted, whether there existed sufficient evidence to convict Petitioner of these crimes is irrelevant as Petitioner was not convicted of these crimes.  Moreover, Petitioner has presented neither argument nor evidence that the prosecuting attorney lacked a sufficient basis to charge Petitioner with these particular offenses.  Nevertheless, even if the Court assumes that the prosecutor would not have been able to secure convictions for breaking and entering and possession of burglar tools, Petitioner still received an enormous benefit by agreeing to the plea agreement.

Petitioner was initially charged with being a fourth habitual felon (i.e., he had previously been convicted of three felonies).  Under Michigan law, if a person previously convicted of three or more felonies is convicted of a subsequent felony that "is punishable upon a first conviction by imprisonment for a maximum term of 5 years or more or for life, the court. . .may

11

sentence the person to imprisonment for life or for a lesser term." Mich. Comp. Laws § 769.12. As part of his plea agreement, the charge of being a fourth habitual felon was dismissed and instead Petitioner agreed to plead guilty to being a third habitual felon (i.e., he had previously been convicted of two felonies). Under Michigan law, if a person previously convicted of two felonies is convicted of a subsequent felony that "is punishable upon a first conviction by imprisonment for a term less than life, the court. . .may sentence the person to imprisonment for a maximum term that is not more than twice the longest term prescribed by law for a first conviction of that offense or for a lesser term." Mich. Comp. Laws § 769.11.

Petitioner testified under oath at the plea hearing that he committed larceny by stealing copper wiring the value of which was greater than $1,000.00. Under Michigan law an individual convicted of larceny of property with a value of $1,000.00 or more but less than $20,000.00 is subject to a prison term of "not more than 5 years or a fine of not more than $10,000.00 or 3 times the value of the property stolen, whichever is great, or both imprisonment and a fine." Mich. Comp. Laws § 750.356(3)(a). Thus, had Petitioner been convicted of larceny and being a fourth habitual offender he faced the possibility of life in prison. On the other hand, by agreeing to plead guilty to larceny and being a third habitual offender, Petitioner faced a maximum prison sentence of no more than 10 years. Even if the Court were persuaded by Petitioner's argument that he could never been convicted on the breaking and entering and possession of burglar tools, the fact remains that Petitioner, who as of the date of sentencing was only 36 years of age, received an *enormous* benefit from the plea agreement into which he entered. Thus, the Court rejects, as utterly unreasonable, Petitioner's argument that he received no benefit from his plea agreement.

12

In sum, for the reasons articulated herein, the Court concludes that Petitioner's decision to plead guilty and enter into the aforementioned plea agreement was made "voluntarily, knowingly, and intelligently" with "sufficient awareness of the relevant circumstances and likely consequences." The Court further concludes that the plea agreement in this matter was not an illusory bargain and that, to the contrary, Petitioner received an enormous benefit from such. Accordingly, the Court recommends that this particular claim be **denied**.

## II.        Vindictive Prosecution

As discussed above, Petitioner believes that the decision to charge him with breaking and entering and possession of burglar tools was improper because there does not exist sufficient evidence to convict him of such charges. Petitioner asserts that the decision by the prosecutor to pursue such allegedly improper charges evidences vindictiveness which violates his due process rights. The Court disagrees.

As the Supreme Court has long recognized, "the Government retains 'broad discretion' as to whom to prosecute." *Wayte v. United States*, 470 U.S. 598, 607 (1985). Accordingly, "[s]o long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion." *Id.* As the *Wayte* Court further observed:

> This broad discretion rests largely on the recognition that the decision to prosecute is particularly ill-suited to judicial review. Such factors as the strength of the case, the prosecution's general deterrence value, the Government's enforcement priorities, and the case's relationship to the Government's overall enforcement plan are not readily

susceptible to the kind of analysis the courts are competent to undertake. Judicial supervision in this area, moreover, entails systemic costs of particular concern. Examining the basis of a prosecution delays the criminal proceeding, threatens to chill law enforcement by subjecting the prosecutor's motives and decisionmaking to outside inquiry, and may undermine prosecutorial effectiveness by revealing the Government's enforcement policy. All these are substantial concerns that make the courts properly hesitant to examine the decision whether to prosecute.

*Id.* at 607-08

Nevertheless, while prosecutorial discretion is "broad," it is not "unfettered" and is "subject to constitutional restraints." *Id.* at 608. Specifically, the decision to prosecute may not be "deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification," including "the exercise of protected statutory and constitutional rights." *Id.*

There is nothing in the record to suggest that there did not exist probable cause to charge Petitioner with breaking and entering and possession of burglar tools. To the contrary, the relevant police report reveals that charging Petitioner with these two offenses was appropriate. The police report indicates that Petitioner gained entry to the location from which he stole the items in question via an "entry gate" on which "it appeared the locking apparatus had been cut." (Presentence Investigation Report, Dkt. #27). Moreover, police officers discovered that "bolt cutters were located inside the yard." *Id.* Such certainly appears to support the charges for breaking and entering and possession of burglar tools. *See, e.g., People v. Toole*, 576 N.W.2d 441, 443 (Mich. Ct. App. 1998); *People v. Wilson*, 446 N.W.2d 571, 573 (Mich. Ct. App. 1989).

Again, Petitioner's argument that there did not exist sufficient evidence to support *a conviction* on these charges is completely irrelevant. While a criminal conviction must be supported by evidence which establishes guilt beyond a reasonable doubt, the decision to charge an

individual with a crime need only be supported by probable cause.  Accordingly, even if the Court assumes that the prosecution would not have been able to secure a conviction on these charges, such does not call into question whether there existed probable cause to charge Petitioner with such.  The Court further notes that Petitioner never challenged in state court whether there existed probable cause to sustain the charges for breaking and entering and possession of burglar tools.  In sum, there is no support in the record to support the argument that the charges in question were initiated in the absence of probable cause.

Petitioner nevertheless asserts that he is entitled to relief because the prosecutor pursued the charges in question "to punish [Petitioner] for asserting a protected statutory o[r] constitutional right."  Petitioner fails, however, identify what right he was allegedly punished for exercising.  Instead, Petitioner appears to simply lament that the prosecutor was apparently more skilled at plea negotiation than he would have preferred.  According to Petitioner, during plea negotiations the prosecutor conceded that the charges for breaking and entering and possession of burglar tools were inappropriate, but simply added that "if a dismissal [of such charges] was forced, the State would amend the charges with new ones."

First, there is no evidence that the prosecutor agreed or conceded that there was no basis for charging Petitioner with breaking and entering and possession of burglar tools.  In support of his position on this item, Petitioner points to the following comments made by the prosecutor at his sentencing:

> The original offer was B & E of a Building with two supplements, which would have made it a 20 year.  Mr. Salemi [Petitioner's counsel] and I went back and forth on a court case that involved entry without breaking [into] a building.  And, because of that court case, we decided to offer this plea bargain at that time, to change it to the

15

Larceny Over 1,000 but Less Than 20,000.

(Sentencing Transcript, April 7, 2008, 6-7).

The "court case" to which the prosecutor made reference is *People v. Jacques*, 572 N.W.2d 195 (Mich. 1998), in which the Michigan Supreme Court held that where an individual gained "entry into an enclosure by crawling under a fence" such did not "constitute[] the crime of entry without breaking." *Id.* at 196-98. The relevance of this case to the present matter is tenuous at best.

Petitioner takes the position that the *Jacques* case somehow prevents his prosecution for breaking and entering. The *Jacques* case, however, involved a different statute (entering without breaking, Mich. Comp. Laws § 750.111) than that which Petitioner was charged with violating (breaking and entering, Mich. Comp. Laws § 750.110). Moreover, there is no suggestion that Petitioner climbed under a fence to gain entry into the structure or enclosure from which he stole the items in question. Instead, as previously noted, the police report indicated that Petitioner gained entry to the location in question via an "entry gate" on which "it appeared the locking apparatus had been cut." Police officers also discovered that "bolt cutters were located inside the yard." Thus, the Court finds unpersuasive any argument that charging Petitioner with breaking and entering and possession of burglar tools was somehow inappropriate.[3]

---

[3] At sentencing, Petitioner advanced the argument that he did not break into the location in question, but instead "just opened the lock with the combination and waltzed into the enclosure." (Sentencing Transcript, April 7, 2008, 21). Petitioner presented no evidence to support this assertion. Nevertheless, the prosecutor agreed to modify Petitioner's presentence report to reflect that "while [the lock] appeared to have been cut," Petitioner "gained access by knowing and using the combination to the lock." (Tr. 21-22). To the extent that Petitioner relies on this exchange in support of his argument, the Court is unpersuaded. First, Petitioner has identified no authority that entering private property in the manner alleged does not constitute "breaking and entering." Moreover, the introduction of such information at *sentencing* does not call into question the decision to charge Petitioner with breaking and entering and possession of burglar tools. As previously discussed, the decision to charge Petitioner with these offenses was supported by the police reports and Petitioner has failed to identify any evidence that establishes (or even suggests) that probable cause did not exist to charge him with these crimes.

The prosecutor's statement, on which Petitioner places so much reliance, evidences, at most, a reasoned calculation by the prosecutor that his ability to secure a conviction on the breaking and entering charge may have been diminished, not that bringing the charge was improper. Furthermore, even if the Court assumes the truthfulness of Petitioner's assertion that the prosecutor stated that "if a dismissal [of such charges] was forced, the State would amend the charges with new ones," absent evidence that such "new" charges were not supported by probable cause or were advanced for improper reason, the Court finds such to be well within the prosecutor's discretion.

The Supreme Court's decision in *Bordenkircher v. Hayes*, 434 U.S. 357 (1978), a case on which Petitioner surprisingly relies, is particularly instructive in this matter. Hayes was initially charged with uttering a forged instrument, the punishment for which was 2-10 in prison. *Id.* at 358. The prosecutor subsequently agreed to "recommend a sentence of five years in prison if Hayes would plead guilty." *Id.* The prosecutor informed Hayes, however, that if he did not accept the plea agreement "he would return to the grand jury to seek an indictment under the Kentucky Habitual Criminal Act. . .which would subject Hayes to a mandatory sentence of life imprisonment by reason of his two prior felony convictions." *Id.* at 358-59.

Hayes refused the plea agreement, after which the prosecutor obtained an indictment charging Hayes under the Kentucky Habitual Criminal Act. *Id.* at 359. It was not disputed that the habitual offender charge was justified by the evidence or that the prosecutor sought such in response to Hayes' refusal to accept the plea agreement. Hayes was subsequently convicted on the underlying charge of uttering a forged instrument, as well as the additional charge of being an habitual offender. Hayes was sentenced to serve life in prison. *Id.* After unsuccessfully challenging his conviction and sentence in state court, Hayes sought habeas relief in federal district court. *Id.* at 360. While the

district court denied Hayes relief, the Sixth Circuit reversed, finding that "the prosecutor's conduct during the bargaining negotiations had violated the principles. . .which 'protect[ed] defendants from the vindictive exercise of a prosecutor's discretion.'"

The Supreme Court granted certiorari and reversed the Sixth Circuit's decision. *Id.* As the Court observed, the decision by the Sixth Circuit "seems to have been that a prosecutor acts vindictively and in violation of due process of law whenever his charging decision is influenced by what he hopes to gain in the course of plea bargaining negotiations." *Id.* at 361. The Court rejected this approach, however. The Court recognized that due process was violated where a criminal defendant, who successfully challenged his conviction but was later convicted in re-trial, received a sentence that was intended to penalize him for challenging his original conviction. *Id.* at 362. The Court also recognized that due process was likewise violated where a criminal defendant who successfully appealed a misdemeanor conviction was subsequently re-indicted on a felony charge. *Id.* As the Court recognized, however, these examples involved "the State's unilateral imposition of a penalty upon a defendant who had chosen to exercise a legal right to attack his original conviction - a situation 'very different from the give-and-take negotiation common in plea bargaining.'" *Id.* As the Court observed:

> To punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort, and for an agent of the State to pursue a course of action whose objective is to penalize a person's reliance on his legal rights is "patently unconstitutional." But in the "give-and-take" of plea bargaining, there is no such element of punishment or retaliation so long as the accused if free to accept or reject the prosecution's offer. Plea bargaining flows from "the mutuality of advantage" to defendants and prosecutors, each with his own reasons for wanting to avoid trial. Defendants advised by competent counsel and protected by other procedural safeguards are presumptively capable of intelligent choice

in response to prosecutorial persuasion, and unlikely to be driven to false self-condemnation. Indeed, acceptance of the basic legitimacy of plea bargaining necessarily implies rejection of any notion that a guilty plea is involuntary in a constitutional sense simply because it is the end result of the bargaining process. By hypothesis, the plea may have been induced by promises of a recommendation of a lenient sentence or a reduction of charges, and thus by fear of the possibility of a greater penalty upon conviction after a trial. While confronting a defendant with the risk of more severe punishment clearly may have a "discouraging effect on the defendant's assertion of his trial rights, the imposition of these difficult choices [is] an inevitable" - and permissible - "attribute of any legitimate system which tolerates and encourages the negotiation of pleas."

*Id.* at 363-64 (internal citations omitted).

In sum, the conduct of which Petitioner complains, like the challenged conduct in *Bordenkircher*, was simply part of the plea negotiation process and not a violation of Petitioner's due process rights. Petitioner has failed to establish that probable cause was lacking with respect to any of the crimes with which he was charged (or allegedly threatened to be charged). Petitioner has likewise failed to demonstrate that the prosecutor undertook any action or made any decision "deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification," including "the exercise of protected statutory and constitutional rights." Accordingly, the undersigned recommends that Petitioner's claim that he was subjected to vindictive prosecution in violation of his due process rights be **denied**.

### III.        Sentencing Claim

Petitioner next asserts that he is entitled to relief because the trial judge improperly scored one of the offense variables when calculating the applicable sentence range under the Michigan Sentencing Guidelines. As this claim implicates Michigan law, however, it is not

cognizable on federal habeas review. *See* 28 U.S.C. § 2254(a) (the federal courts can only consider habeas claims alleging "violation of the Constitution, laws, or treaties of the United States"); *Coleman v. Curtin*, 425 Fed. Appx. 483, 484-85 (6th Cir., June 6, 2011) (claims that a state court improperly calculated the relevant offense variables is not cognizable in a federal habeas proceeding).

The Court further finds that this claim is moot. With respect to this particular claim, Petitioner argues merely that his guideline score should be recalculated after which he be resentenced. However, as Petitioner has already been released from custody this claim is moot. *See, e.g., Demis v. Sniezek*, 558 F.3d 508, 513 (6th Cir. 2009); *Diaz v. Kinkela*, 253 F.3d 241, 242 (6th Cir. 2001). Accordingly, the undersigned recommends that this claim be **denied**.


IV.          **Ineffective Assistance of Counsel**

Finally, Petitioner asserts that his right to the effective assistance of counsel was violated by his trial counsel's numerous errors. Petitioner asserts that were it not for his attorney's ineffective assistance he "would NEVER have plead guilty and would have exercised his right to trial by either judge or jury, his motion to withdraw would have been granted, the sentence would have been less and the charges would have been dismissed."

To establish ineffective assistance of counsel, Petitioner must show both deficient performance by his counsel and prejudice resulting therefrom. *See Premo v. Moore*, 131 S.Ct. 733, 739 (2011). To establish deficient performance, Petitioner must show that "counsel's representation fell below an objective standard of reasonableness." *Premo*, 131 S.Ct. at 739 (quoting *Strickland v. Washington*, 466 U.S. 668, 688 (1984)). A court considering a claim of ineffective assistance

must apply a "strong presumption that counsel's representation was within the 'wide range' of reasonable professional assistance." *Premo*, 131 S.Ct. at 739 (quoting *Strickland*, 466 U.S. at 689). Petitioner's burden is to show that "counsel made errors so serious that [she] was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Premo*, 131 S.Ct. at 739 (quoting *Strickland*, 466 U.S. at 687).

Petitioner must further establish that he suffered prejudice as a result of his attorney's allegedly deficient performance. Prejudice, in this context, has been defined as "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Premo*, 131 S.Ct. at 739 (quoting *Padilla v. Kentucky*, 130 S.Ct. 1473, 1485 (2010)); *see also*, *Mahdi v. Bagley*, 522 F.3d 631, 636 (6th Cir. 2008). The issue is whether counsel's representation "amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Premo*, 131 S.Ct. at 739 (quoting *Strickland*, 466 U.S. at 690). This is a heavy burden for Petitioner to meet, because he must establish that his counsel's performance was "so manifestly ineffective that defeat was snatched from the hands of probable victory." *Jacobs v. Mohr*, 265 F.3d 407, 418 (6th Cir. 2001).

As the Supreme Court has made clear, even when reviewing an ineffective assistance of counsel claim *de novo*, "the standard for judging counsel's representation is a most deferential one." *Premo*, 131 S.Ct. at 740. Likewise, the standard by which petitions for habeas relief are judged is "highly deferential." Thus, when reviewing, in the context of a habeas petition, whether a state court unreasonably applied the *Strickland* standard, review is "doubly" deferential. *Id.* (citations omitted). As the Supreme Court recently concluded:

The *Strickland* standard is a general one, so the range of reasonable

21

applications is substantial.  Federal habeas courts must guard against the danger of equating reasonableness under *Strickland* with unreasonableness under § 2254(d).  When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Id.* (internal citations omitted).

In support of this particular claim, Petitioner asserts that his trial attorney allegedly made the following errors:

1.   failed to understand the elements of the offenses.

2.   failed to hold the State to proving the elements of the offenses.

3.   failed to become aware of higher Court decisions that would have dismissed the charges.

4.   failed to subject the prosecutor's case to meaningful adversarial testing.

5.   failed to file motions to quash the charges and misleading the defendant to believe that this motion could not be filed after the preliminary exam.

6.   allowed Petitioner to believe that the improper greater offenses could be proved by the State to obtain a guilty verdict.

7.   encouraged Petitioner to accept an illusory plea bargain and to plead guilty to a crime that was never committed.

8.   improperly scored the sentencing guidelines scores and then tailored a plea bargain that Petitioner be sentenced within the improperly scored range.

9.   used a 2006 guideline sentencing manual that did not score points for a "loss being financial."

10.   applied the two supplements to the HO 2 portion of the grid instead of the proper HO 3 part.

11.   filed the wrong issues for the motion to withdraw plea.

12.   did not prepare for the sentencing proceedings.

13.     did not properly argue the obvious mistakes of law for the assessment of points for OV 9.

14.     disregarded his professional and ethical duties to assist his client to the standards set forth by the American Bar Association.

Petitioner has failed to establish that any of these allegations of deficient performance has any merit.  The Court need not, however, analyze each and every one of Petitioner's allegations of error.  Even if the Court assumes that counsel's performance was deficient in one or more of the ways alleged, Petitioner's claim nevertheless fails because he cannot establish that he was prejudiced by his attorney's allegedly deficient performance.

As the Supreme Court has indicated, where a petitioner asserts that but for counsel's allegedly deficient performance he would not have agreed to plead guilty, but would have instead proceeded to trial, to establish that he was prejudiced by his attorney's allegedly deficient performance, the petitioner "must convince the court that a decision to reject the plea bargain would have been rational under the circumstances." *Padilla v. Kentucky*, 130 S.Ct. 1473, 1485 (2010); *see also*, *Pilla v. United States*, 668 F.3d 368, 373 (6th Cir. 2012) (reiterating that to satisfy the prejudice prong, the petitioner cannot merely assert that he would have gone to trial absent the allegedly deficient performance, but must instead "convince the court that a decision to reject the plea bargain would have been rational under the circumstances").

Simply put, Petitioner cannot establish that rejecting the plea bargain and going to trial would have been a rational decision.  By agreeing to plead guilty, Petitioner received a sentence of only 43-120 months in prison which has already served.  On the other hand, given Petitioner's prior criminal record he faced life in prison if convicted on any of the crimes with which he had been initially charged.  It is also possible that Petitioner could have been charged with additional crimes,

23

conviction on which may likewise have subjected Petitioner to a sentence of life in prison.

Despite Petitioner's unsubstantiated assertions of innocence, the record contains no evidence to suggest that Petitioner was even remotely likely to avoid conviction on any of the charges in question.  In this respect, the Court also notes that the man who jointly committed the offenses in question with Petitioner also pleaded guilty to larceny and would almost certainly have testified at Petitioner's trial.  Furthermore, as discussed above, Petitioner has failed to establish that the charges levied against him were improperly asserted or advanced for improper motive.  Petitioner has presented neither evidence nor argument that there existed any rational or colorable basis for obtaining dismissal of any of the charges he faced.  In sum, as discussed above, Petitioner obtained an *enormous* benefit by pleading guilty in this matter and Petitioner simply cannot establish that it would have been a rational decision to reject the plea agreement and proceed to trial.  Accordingly, the undersigned recommends that Petitioner's claim of ineffective assistance of counsel be **denied**.

## CONCLUSION

For the reasons articulated herein, the undersigned concludes that Petitioner is not being confined in violation of the laws, Constitution, or treaties of the United States.  Accordingly, the undersigned recommends that Marchese's petition for writ of habeas corpus be **denied**.  The undersigned further recommends that a certificate of appealability be denied.  *See Slack v. McDaniel*, 529 U.S. 473 (2000).

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within 14 days of the date of service of this notice.  28 U.S.C. § 636(b)(1)(C).  Failure to file

objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

Date:  May 2, 2012

 /s/ Ellen S. Carmody
ELLEN S. CARMODY
United States Magistrate Judge

25